CORY COLE, §
 §
            Plaintiff, §
 §
*versus* §          CIVIL ACTION NO. 1:13-CV-176
 §
CITY OF PORT ARTHUR, TEXAS, §
 §
            Defendant. §

## MEMORANDUM AND ORDER

Pending before the court is Defendant City of Port Arthur, Texas's ("Defendant" or "the City") Motion for Summary Judgment (#14).  The City seeks summary judgment as to Plaintiff Cory Cole's ("Cole") claims brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Texas Whistleblower Act ("TWA"), TEX. GOV'T CODE ANN. § 554.001 *et seq.*  Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Defendant's motion should be granted.

I.     Background

On February 21, 2013, Cole filed suit in the 58th Judicial District Court of Jefferson County, Texas.  Defendant removed the case to federal court on March 22, 2013.  Cole alleges that at certain times during his employment as a patrol officer for the Port Arthur Police Department, he was denied the use of his compensatory time ("comp time") when requested or within a reasonable time thereafter in violation of the FLSA.  He also claims that he was subjected to retaliation in violation of the FLSA and the TWA after reporting the alleged denials of his comp time.

On October 31, 2013, the City filed the instant motion for summary judgment, arguing that Cole cannot maintain a comp time claim under the FLSA because there is no evidence that he lost any comp time. Defendant also maintains that Cole was refused comp time off on particular occasions because it would have unduly disrupted the operations of the police department and that, in any event, Cole was always given comp time off within a reasonable time after his request. The City also contends that summary judgment is appropriate as to Cole's FLSA retaliation claim because there is no evidence that he suffered an adverse employment action, the reasons for the City's employment decisions were legitimate and reasonable, and there is no evidence of "but-for" causation. With regard to Cole's TWA claim, Defendant asserts that summary judgment is warranted because Cole did not report the alleged protected activity to an appropriate law enforcement authority in good faith, did not sustain an adverse employment action, cannot establish causation, and cannot demonstrate that he filed suit or initiated the City's internal grievance procedures in a timely manner.

In response, Cole insists that summary judgment is not appropriate, as he was wrongfully denied the use of his comp time off on unspecified occasions prior to August 2011, on August 13, 2011, September 26, 2011, and October 15-16, 2011. He also lists several instances of alleged retaliation.

II.    Analysis

A.    Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party seeking

summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 407 (5th Cir. 2012); *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009). Where a defendant moves for summary judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion, "evidence must be adduced supporting each element of the defense and demonstrating the lack of any genuine issue of material fact with regard thereto." *Terrebone Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002); *see United States v. Renda Marine, Inc.*, 667 F.3d 651, 659 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 1800 (2013); *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir.), *cert. denied*, 522 U.S. 915 (1997). To warrant judgment in its favor, the movant "'"must establish beyond peradventure *all* of the essential elements of the defense."'" *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003) (emphasis in original) (quoting *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986))); *accord Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010).

"A fact is material only if its resolution would affect the outcome of the action . . . ." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is '*genuine*'

if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Poole*, 691 F.3d at 627; *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010); *Wiley*, 585 F.3d at 210; *EMCASCO Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 438 F.3d 519, 523 (5th Cir. 2006).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to demonstrate the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322 n.3 (quoting FED. R. CIV. P. 56(e)); *Anderson*, 477 U.S. at 256; *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013); *Bayle*, 615 F.3d at 355; *EMCASCO Ins. Co.*, 438 F.3d at 523. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see Riverwood Int'l Corp. v. Emp'rs Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005). All the evidence must be construed in the light most favorable to the nonmoving party, and the court will not weigh the evidence or evaluate its credibility. *Reeves*, 530 U.S. at 150; *Downhole Navigator, LLC v. Nautilus Ins. Co.*, 686 F.3d 325, 328 (5th Cir. 2012); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir. 2005). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in his favor. *Groh v. Ramirez*, 540 U.S. 551, 562 (2004) (citing *Anderson*, 477 U.S. at 255); *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 192

(5th Cir. 2011), *cert. denied*, 133 S. Ct. 22 (2012); *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 258 (5th Cir. 2009). The evidence is construed "'in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Furthermore, "only reasonable inferences in favor of the nonmoving party can be drawn from the evidence." *Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 779 (E.D. Tex. 2008) (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992)); *accord Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012). "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Eastman Kodak Co.*, 504 U.S. at 468-69; *accord Shelter Mut. Ins. Co. v. Simmons*, 543 F. Supp. 2d 582, 584-85 (S.D. Miss.), *aff'd*, 293 F. App'x 273 (5th Cir. 2008). The nonmovant's burden is not satisfied by "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,'" by speculation, by the mere existence of some alleged factual dispute, or "by only a 'scintilla' of evidence." *Little*, 37 F.3d at 1075 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)); *accord Stauffer v. Gearhart*, 741 F.3d 574, 581 (5th Cir. 2014); *Thibodeaux v. Vamos Oil & Gas Co.*, 487 F.3d 288, 294-95 (5th Cir. 2007). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *accord Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir.

2012); *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *see Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *EMCASCO Ins. Co.*, 438 F.3d at 523; *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 110 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004). "[W]here the nonmoving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, no genuine issue of material fact can exist." *Apache Corp. v. W&T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010) (internal quotations omitted). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B. <u>Adequate Time for Discovery</u>

As a threshold matter, Cole contends that he has not had an adequate time for discovery. Rule 56(d) (formerly Rule 56(f)) of the Federal Rules of Civil Procedure provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

FED. R. CIV. P. 56(d). The Committee on Civil Rules in its Advisory Notes states that Rule 56(d) "carries forward without substantial change the provisions of former subdivision (f)." *See Castro*

*v. Tex. Dep't of Crim. Justice*, 541 F. App'x 374, 377 n.3 (5th Cir. 2013). "Rule 56(f) discovery motions are 'broadly favored and should be liberally granted' because the rule is designed to 'safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'" *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quoting *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006)); *see Castro*, 541 F. App'x at 377; *Mitchell v. Sikorsky Aircraft*, 533 F. App'x 354, 358 (5th Cir. 2013).

Nevertheless, the non-movant "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts . . . ." *Sec. & Exch. Comm'n v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980), *cert. denied*, 449 U.S. 1082 (1981); *accord Brown v. Cain*, 546 F. App'x 471, 476 (5th Cir. 2013); *Raby*, 600 F.3d at 561. Rather, the non-movant must "'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *Raby*, 600 F.3d at 561 (quoting *C.B. Trucking, Inc. v. Waste Mgmt. Inc.*, 137 F.3d 41, 44 (1st Cir. 1998)); *see Brown*, 546 F. App'x at 476; *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 869 (5th Cir. 2010); *see also* Standing Order MC-56(a)(5) ("If the nonmoving party needs more discovery as to a particular fact listed by the movant, such party must state exactly what discovery is required, from whom it is needed, and when the party proposes to complete such discovery."). This is particularly pertinent where "ample time and opportunities for discovery have already lapsed." *Sec. & Exch. Comm'n*, 612 F.2d at 901. A district court does not abuse its discretion by denying a Rule 56(d) motion when the party seeking relief does not explain how additional discovery would

create a genuine issue of material fact. *See Gibson v. U.S. Postal Serv.*, 380 F.3d 886, 889 n.2 (5th Cir. 2004).

The court finds that Cole has not set forth a plausible basis for believing that he lacked an adequate time for discovery. The City did not file the instant motion until the deadline set forth in the parties' agreed scheduling order, and Cole never requested an extension during the discovery period, which lasted almost six months. Thus, Cole has had ample opportunity to conduct discovery. Moreover, although Cole states that "despite [his] due diligence in scheduling the Defendant's depositions, the Defendant's employees have not been deposed, including witnesses to the violations and retaliation under the FLSA," Cole does not explain how he has been diligent in attempting to schedule these depositions. Further, he does not identify any discoverable facts or explain how they would influence the disposition of this motion. The court finds this insufficient to warrant a postponement of its ruling to allow additional time for discovery. Accordingly, Cole's request is denied.

C.    FLSA Overview

"In 1938 Congress enacted the FLSA as a means of regulating minimum wages, maximum working hours, and child labor in industries that affected interstate commerce." *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1024 (5th Cir. 1993) (citing 29 U.S.C. § 202); *see also Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013); *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 407 (5th Cir. 2010). The Act created minimum protections for individual workers to ensure that each employee would receive "'"[a] fair day's pay for a fair day's work"' and would be protected from 'the evil of "overwork" as well as "underpay."'" *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting

*Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942) (quoting 81 CONG. REC. 4983 (1937) (message of President Roosevelt))); *see also Belt v. EmCare, Inc.*, 444 F.3d 403, 417 (5th Cir.), *cert. denied*, 549 U.S. 826 (2006). Accordingly, the FLSA establishes "a minimum wage, regulations governing maximum hours, record-keeping and reporting requirements, provisions regulating child labor, and civil and criminal penalties for violation of any of its terms." *Lee v. Veolia ES Indus. Servs., Inc.*, No. 1:12-CV-136, 2013 WL 2298216, at *10 (E.D. Tex. May 23, 2013). "Minimum wage and overtime requirements are the two central themes of the Act." *Id.*; *Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 889-90 (E.D. Tex. 1997) (quoting *Arnold v. Arkansas*, 910 F. Supp. 1385, 1392 (E.D. Ark. 1995)). "'Section [6] . . . of the FLSA mandates [an] . . . hourly minimum wage due to all employees[, while] . . . Section [7] delineates maximum work hour limitations.'" *Cash*, 2 F. Supp. 2d at 890 (quoting *Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1267 (4th Cir. 1996)). The fundamental underlying theory behind the FLSA's minimum wage provisions is that employees are paid finally and unconditionally. *See Castellanos-Contreras*, 622 F.3d at 408; *Castillo v. Case Farms of Ohio, Inc.*, 96 F. Supp. 2d 578, 637 (W.D. Tex. 1999).

"The FLSA requires any employee working over 40 hours in a week to be paid overtime, premium compensation at the rate of one and one-half times their 'regular rate' of pay." *York v. City of Wichita Falls*, 48 F.3d 919, 921 (5th Cir. 1995) (citing 29 U.S.C. § 207(a)(1)); *see also Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 382 n.7 (5th Cir. 2013); *Belt*, 444 F.3d at 407; *Singer v. City of Waco*, 324 F.3d 813, 818 (5th Cir. 2003), *cert. denied*, 540 U.S. 1177 (2004). "''An employer who is armed with [knowledge that an employee is working overtime] cannot stand idly by and allow an employee to perform overtime work without proper compensation, even

if the employee does not make a claim for the overtime compensation."'" *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (quoting *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981))).

An employee who brings suit for unpaid overtime compensation under the FLSA bears the burden of proving, with definite and certain evidence, that he performed work for which he was not compensated properly. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 686-87 (1946); *see also Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980), *cert. denied*, 449 U.S. 1077 (1981); *Garner v. Chevron Phillips Chem. Co., L.P.*, 834 F. Supp. 2d 528, 545-46 (S.D. Tex. 2011); *Agee v. Wayne Farms LLC*, 675 F. Supp. 2d 684, 690 (S.D. Miss. 2009); *accord Ihegword v. Harris Cnty. Hosp. Dist.*, 555 F. App'x 372, 374 (5th Cir. 2014). When the employer is in possession of the pertinent employment records, "the employee may easily discharge his burden by securing the production of those records." *Mt. Clemens Pottery Co.*, 328 U.S. at 687. If the employer's records are inaccurate or inadequate, however, the employee can meet his burden by proving that he, in fact, performed work for which he was improperly compensated and produce sufficient evidence to show the amount and extent of the work "as a matter of just and reasonable inference." *Id.*; *Albanil v. Coast 2 Coast, Inc.*, 444 F. App'x 788, 806 (5th Cir. 2011); *Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 F. App'x 448, 455 (5th Cir. 2009).

D.    Comp Time

The FLSA allows a state and a political subdivision of the state to utilize comp time in lieu of overtime pay, subject to certain restrictions.  *See* 29 U.S.C. § 207(o);[1] *accord Christensen v. Harris Cnty.*, 529 U.S. 576, 578 (2000); *Talbert v. Am. Risk Ins. Co.*, 405 F. App'x 848, 853 (5th Cir. 2010).  Under § 207(o)(5):

> An employee of a public agency which is a State, political subdivision of a State, or an interstate governmental agency . . . (A) who has accrued compensatory time off authorized to be provided under paragraph (1), and (B) who has requested the use of such compensatory time, shall be permitted by the employee's employer to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency.

*See* 29 U.S.C. § 207(o)(5); *accord Houston Police Officers' Union v. City of Houston*, 330 F.3d 298, 301-02 (5th Cir.), *cert. denied*, 540 U.S. 879 (2003).  "[T]he statute does not require a public employer to authorize comp-time use as specifically requested by an employee (subject to the undue disruption clause), but instead requires that the comp time be permitted within a reasonable period after the employee requests its use." *Houston Police Officers' Union*, 330 F.3d at 304; *accord Mortensen v. Cnty. of Sacramento*, 368 F.3d 1082, 1084 (9th Cir. 2004).

Under the statute's implementing regulations, "[w]hether a request to use compensatory time has been granted within a 'reasonable period' will be determined by considering the customary work practices within the agency based on the facts and circumstances in each case."

---

[1] Section 207(o) provides:

(1) Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.

29 C.F.R. § 553.25. "Such practices include, but are not limited to (a) the normal schedule of work, (b) anticipated peak workloads based on past experience, (c) emergency requirements for staff and services, and (d) the availability of qualified substitute staff." *Id.*

Section 553.25 also provides that "[m]ere inconvenience to the employer is an insufficient basis for denial of a request for compensatory time off." *Id.* "For an agency to turn down a request from an employee for compensatory time off requires that it should reasonably and in good faith anticipate that it would impose an unreasonable burden on the agency's ability to provide services of acceptable quality and quantity for the public during the time requested without the use of the employee's services." *Id.*

In the case at bar, Cole explains that he accrues a significant amount of comp time because, during his tenure with the Port Arthur Police Department (which began in 2007), he has served on the "S.W.A.T." team and in the "G.R.E.A.T." program, worked within the K-9 Unit, and at times serves as a Field Training Officer. In his Original Petition, he identifies three instances in which he was allegedly denied the use of his comp time within a reasonable time after his request: (1) August 13, 2011; (2) September 26, 2011;[2] and (3) October 14-16, 2011.[3]

---

[2] Cole's petition states that he was denied the use his comp time on September 18, 2011. At deposition, however, he clarified that the correct date in September he was allegedly denied comp time was September 26, 2011. In any event, the "Evening Shift Weekly Schedule" for September 2011 submitted by the City reveals that Cole used comp time on September 18, 19, and 20, 2011.

[3] In his response to the City's motion, Cole points to testimony that he and other police officers were also improperly denied comp time at unspecified dates prior to August 2011. These allegations, however, are not included in Cole's Original Petition. Thus, they are not properly before the court. *See Cutrera*, 429 F.3d at 113 ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."); *Tillery v. Nat'l Flood Ins. Program*, No. 06-4934, 2007 WL 4348313, at *2 n.2 (E.D. La. Dec. 4, 2007) (holding that plaintiff's argument was not properly before the court because "it was not alleged in the complaint"). In any event, Cole is unable to provide even a ballpark estimate as to when or how often he was denied the use of his comp time. *See Ihegword*, 555 F. App'x at 375 ("As noted by the district judge, 'an unsubstantiated and

First, Cole complains that on August 10, 2011, he asked his supervisor, Sergeant Terry Chance ("Chance"), to use his comp time on August 13, 2011. According to Cole, Chance denied his request with no explanation, despite the police department having more than the minimum number of officers required to be on duty during that shift. In the Original Petition and at deposition, however, Cole states that after his August 10 request was denied by Chance, he immediately contacted Lieutenant Martin Blitch ("Blitch"), Chance's supervisor, about the situation. Blitch reportedly informed Cole that Chance's refusal to allow the use of comp time violated the FLSA, and Cole was permitted to use his comp time on the date he requested—August 13, 2011. Based on this uncontested evidence, Cole was not denied the use of his comp time on August 13, 2011.

Cole next asserts that he was not allowed to use his comp time on September 26, 2011. According to Cole, during this general time frame, when a request for comp time was made, Blitch would initially deny the request even if the department was above minimum staffing at the time. The officers would then be required to report to work to ensure that the department could still meet minimum staffing levels. If no officers called in sick, the officer would be permitted to use his comp time for the remainder of the day. Cole asserts that on September 26, 2011, he asked Blitch if he could use his comp time that day, but his request was denied. Employment records produced by the City, however, reveal that on September 26, Officer Rudy Orta ("Orta") did not report for duty until 1.5 hours into the shift, which put the department at minimum staffing

speculative estimate of uncompensated overtime does not constitute evidence sufficient to show the amount and extent of that work as a matter of just and reasonable inference.'") (quoting *Ihegword v. Harris Cnty. Hosp. Dist.*, 929 F. Supp. 2d 635, 668 (S.D. Tex. 2013) (citing *Harvill*, 433 F.3d at 441))). Consequently, Cole cannot maintain an FLSA claim premised on the alleged denials of comp time occurring before August 2011.

at the beginning of the shift. Nothing in Cole's testimony or other evidence refutes this fact. Further, no evidence counters Chief Mark Blanton's ("Chief Blanton") affidavit which explains the purpose and necessity of the department's shift schedules. Indeed, Chief Blanton's affidavit states:

> In selecting the minimum requirement threshold, the Port Arthur Police Department has determined that if the Department goes below the minimum staffing requirements, [it] has insufficient manpower on the streets to efficiently and adequately respond to the law enforcement needs of the community. Accordingly, when our numbers drop below the minimum staffing requirements, it unduly disrupts the effectiveness of the Port Arthur Police Department. Although there are additional supervisors on those shifts, they are not included in the minimum staffing requirements, as they are responsible for other supervisory duties.
>
> The Port Arthur Police Department, currently, and at all times relevant to the above referenced suit, has a 10 hour shift schedule covering three shifts. The day shift runs from 6:30 a.m. to 4:30 p.m. The evening shift runs from 2:30 p.m. to 12:30 a.m. The night shift runs from 9:30 p.m. to 7:30 a.m.
>
> As can be seen, these shifts overlap, and were purposefully designed that way to provide maximum coverage of police services during peak times of need in our attempts to provide effective, timely and efficient law enforcement services and response times to the public which we serve.
>
> The peak time for services during the day is around 2:30 p.m. to 4:30 p.m. when traffic increases and kids get out of school, and accordingly, can result in increased traffic accidents and/or traffic related problems, as well as other incidents involving children. The other primary peak time is between 9:30 p.m. and 12:30 a.m., where there is an increased need for officers due to general violence, burglary and other disturbances.
>
> The overlap also serves the need of transitioning from one shift to another, including updating the next set of officers regarding ongoing issues, completing reports, and updating them on recent crimes, development and activities, as well as performing administrative tasks.
>
> This overlap was not designed as a personal avenue for police officers to take partial comp time off of work. If officers are allowed to take partial comp days off by showing up late or taking off early, during these peak times, the . . . Department would have to operate with a continuously fluctuating number of fewer

officers during peak need. This would defeat the entire purpose of the 10 hour shift schedule and its designed overlap. Further, this would also cause undue disruption with respect to timely responses and the effective and efficient operation of the . . . Department and would also harm our efforts to provide effective and efficient law enforcement services to the citizens of Port Arthur.

*See* Docket No. 19-2.

Further, the City's employment records (which Cole does not contradict with documentary or other evidence) reveal that Cole either was off or used comp time for six of the eight days leading up to September 26, 2011. The records also show that following that date, Cole was away from work (designated days off or vacation) for eight out of the next thirteen days through October 9, 2011, on which day he used comp time. Based on this evidence, it is apparent that the City did not deny Cole the use of his comp time within a reasonable period of time. *See Mortensen*, 368 F.3d at 1091 (finding that the county's policy of granting requests within one year was reasonable, in light of an agreement between the parties that requests to use comp time would be permitted within one year). In any event, the City was justified in denying Cole comp time on September 26, 2011, because when he asked for the day off, Orta had not yet reported to work and, therefore, the department was at minimum staffing. Chief Blanton's uncontroverted affidavit confirms that Cole's absence from work would have unduly interfered with the operations of the department. Moreover, although Cole believes that the supervisors on duty and the overlapping shifts make the department above staffing (and, therefore, he should be allowed to use comp time), he offers no evidence contradicting Chief Blanton's position that supervisors are not included in the minimum staffing because they are responsible for separate duties and that allowing officers

to take time off during peak periods would defeat the purpose of the overlapping work shifts, causing undue disruption within the department.[4]

Cole also complains that he was wrongfully denied the use of his comp time on October 14-16. At deposition, however, Cole concedes that he was not denied the use of his comp time on October 14, 2011, as it was already his designated day off. He further clarified that he was given only one hour of comp time (instead of a full day as he requested) on October 16, 2011, when the department was above minimum staffing by one officer.

With regard to October 15, 2011, Cole asserts that at the time he made his request for comp time, the department was above minimum staffing. Cole was ultimately denied comp time for October 15, 2011, however, because Officer Patrick Britton's ("Britton") mother passed away on October 14, 2011. Therefore, Britton's use of death leave on October 15, 2011, placed the department at minimum staffing. Cole's argument that he would have had the day off if his request had been granted immediately (that is, prior to Britton's requesting death leave) does not create a genuine issue of material fact. The undisputed evidence demonstrates that allowing Cole to take comp time on October 15 would have resulted in an insufficient number of officers on duty. Indeed, at deposition, Cole appeared to acknowledge that Britton's request for death leave "put [the department] below staffing . . . put us at minimum" giving "[the department] justification on denying [Cole] comp time." In any event, the City did not deny Cole the use of his comp time within a reasonable time. Rather, the employment records demonstrate that Cole

---

[4] The argument that Blitch denied partial day comp time requests regarding leaving shifts early (or showing up late) when there were no minimum staffing issues due to the overlapping shifts is not included in Cole's petition. Regardless, Cole admitted he was unable to recall any specific dates in which he was denied a partial day comp time request, and there is no evidence that he was unable to take comp time within a reasonable period of time after these alleged requests.

received a partial comp day on October 16 and full comp days soon thereafter on October 18, 23, and 30 as well as November 5, l2, l3, and 20.

In short, the City granted Cole the use of his comp time within a reasonable period of time after each request, and Cole never lost any comp time.[5]  On the occasions that Cole was denied the use of his comp time, it was due to minimum staffing requirements, and his absence on those days would have caused the department undue disruption.  Thus, the court finds that Cole has not created a genuine issue of material fact with regard to his allegations that he was denied comp time in violation of 29 U.S.C. § 207(o)(5).  The City, therefore, is entitled to summary judgment on this claim.

E.      FLSA Retaliation

The FLSA prohibits any person from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding. . . ."  29 U.S.C. § 215(a)(3).  "A retaliation claim under

_____

[5] At deposition, Cole admitted that he never lost any comp time:

Q.      Have you ever lost any comp time by not having – is there a carry-over restriction on comp time?

A.      . . . But I never lost any comp time because it turns over as overtime, and that's one of the arguments I always had.  I was like if it turns into overtime, why wouldn't you allow me to use it when it doesn't cost the City any overtime. . . .

Q.      So, as we sit here today, you've not been denied any comp that caused you to lose compensation for that time; is that fair?

A.      No, it would just stay in the books; or as I generate more comp time, it would roll over as overtime.

See Docket No. 14-1 (Depo. Cole, p. 30:5-23).

the FLSA is subject to the *McDonnell Douglas* analytical framework." *Lasater v. Tex. A&M Univ.-Commerce*, 495 F. App'x 458, 461 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 2811 (2013) (citing *Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 577 (5th Cir. 2004)).[6] Thus, a plaintiff must first make a prima facie showing of "(1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *Hagan*, 529 F.3d at 624; *see Ardoin v. Police Jury of Evangeline Parish*, 547 F. App'x 401, 403 (5th Cir. 2013); *Alvarez v. Amb-Trans Inc.*, No. 11-CV-179, 2012 WL 4103876, at *3 (W.D. Tex. Sept. 17, 2012); *Eyles v. Uline, Inc.*, No. 4:08-CV-577, 2009 WL 2868447, at *4 (N.D. Tex. Sept. 4, 2009), *aff'd*, 381 F. App'x 384 (5th Cir. 2010). Once a plaintiff "meets this burden, the defendant must then articulate a legitimate, [non-retaliatory] reason for its decision." *Hagan*, 529 F.3d at 624. "The burden then shifts to the plaintiff to demonstrate that the proffered reason is a pretext for [retaliation]." *Lasater*, 495 F. App'x at 461 (citing *Hagan*, 529 F.3d at 624).

### 1. Protected Activity

To demonstrate that he participated in an FLSA protected activity, Cole "must demonstrate that [he] filed a complaint." *Lasater*, 495 F. App'x at 461. "In order for an employee's communication to constitute a 'complaint,' the 'employer must have fair notice that an employee

---

[6] Several of the cases cited herein involve Title VII rather than FLSA claims. Because "the purpose of [the two statutes'] retaliation provisions is one and the same," courts look to Title VII cases in interpreting FLSA claims. *Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) (adopting Title VII jurisprudence regarding protection for former employees); *see Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008) (adopting the Title VII *McDonnell Douglas* framework in FLSA retaliation claim); *Haynes v. Crescent Real Estate Equities, LLC*, No. H-11-2201, 2012 WL 2574749, at *7 n.3 (S.D. Tex. July 2, 2012); *Cantu v. Vitol, Inc.*, No. H-09-0576, 2011 WL 486289, at *10 (S.D. Tex. Feb. 7, 2011).

is making a complaint that could subject the employer to a later claim of retaliation' and the 'complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the [FLSA] and a call for their protection.'" *Id.* (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, ___ U.S. ___, 131 S. Ct. 1325, 1334-35 (2011)). Complaints may be made orally. *Kasten*, 131 S. Ct. at 1334-35. Nonetheless, "[n]ot all 'abstract grumblings' or vague expressions of discontent are actionable as complaints." *Lasater*, 495 F. App'x at 461 (quoting *Valerio v. Putnam Assocs. Inc.*, 173 F.3d 35, 44 (1st Cir. 1999)). Thus, although a plaintiff "need not explicitly refer to the FLSA statute itself, the complaint does need to be framed in terms of potential illegality." *Lasater*, 495 F. App'x at 461 (citing *Hagan*, 529 F.3d at 626). In short, "an employee's communication does not constitute a complaint unless that employee 'somehow steps outside of his normal job role' so as to make clear to the employer that the employee is 'taking a position adverse to the employer.'" *Lasater*, 495 F. App'x at 461-62 (citing *Hagan*, 529 F.3d at 627-28).

In April 2012, Cole made a verbal complaint to Blitch as well as to Officer Steve Flores ("Flores"), the president of the Police Officers' Association and his union representative, who thereafter contacted Cole's superiors. Cole continued his dialogue with Flores throughout 2012 and was at some point advised that the CLEAT attorneys had been notified of his complaint. Accordingly, Cole has met the first element of a prima facie case of retaliation. *See Alvarez*, 2012 WL 4103876 at *3 (finding that the plaintiff engaged in protected activity by complaining to his supervisor that he was not receiving the overtime compensation to which he was entitled).

2.    Adverse Employment Action

A plaintiff asserting a retaliation claim must show that the employer took a "materially adverse" action that "could well dissuade a reasonable worker" from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (recognizing *White* as setting forth the controlling standard for evaluating adverse employment actions in the context of retaliation claims under Title VII); *Alvarez*, 2012 WL 4103876, at *4 (applying this definition of adverse employment action to FLSA retaliation claim); *accord Darveau*, 515 F.3d at 343. "In the context of a retaliation claim, the definition of an adverse employment action is not limited to actions that affect the 'terms and conditions of employment' but rather 'extends beyond workplace-related or employment-related retaliatory acts and harm.'" *Alvarez*, 2012 WL 4103876, at *4 (quoting *White*, 548 U.S. at 64, 67).

a.    Narcotics Unit

Cole alleges that in May 2012, the City failed to promote him to the Narcotics Unit because Blitch and Chance negatively influenced the members of the hiring committee. Because the denial of a promotion constitutes a materially adverse action that would dissuade a reasonable employee from engaging in protected activity, Cole satisfies the second element of his prima facie case with regard to this claim. *See AuBuchon v. Geithner*, 743 F.3d 638, 643 (8th Cir. 2014) ("Unquestionably, failure to promote can constitute an adverse employment action that would support a plaintiff's retaliation claim."); *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007) (recognizing that the denial of a promotion is an actionable adverse employment action); *Booker v. Holder*, No. H-07-2914, 2009 WL 4432689, at *19 (S.D. Tex. Nov. 17, 2009) (stating

in retaliatory failure to promote case that the failure to promote plaintiff to a certain position did effect a materially adverse employment action).

b. <u>Field Training Officer Program</u>

In May 2012, Blitch allegedly attempted to have Cole fired from the Field Training Officer program, not only because of his accumulation and use of comp time, but also to prevent him from further obtaining such time. When asked about the basis for his suspicions in this regard, Cole testified that Sergeant Ramirez ("Ramirez") informed him that Blitch was attempting to have Cole removed from the program solely on the basis that he used too much comp time. Cole believes that Blitch approached Major Dennis Odom ("Odom") and informed him that Cole was improperly using comp time during shifts when he was responsible for training a rookie. Despite Cole's suspicions, the court finds that he has failed to show that he suffered an adverse employment action for purposes of his retaliation claim for several reasons.

First, Cole testified at deposition that Odom is the only officer in the department with the final authority to remove an officer from the Field Training Officer program. Ramirez, the officer in charge of the program, reportedly informed Odom that Cole generally does not use comp time when he is training a rookie. Second, Cole has no evidence that Blitch ever asked Odom to remove Cole from the program, and no evidence as to the contents of their conversations. Most importantly, Cole was not removed from the program. In addition, he concedes that he was never disciplined, demoted, or otherwise harmed. *See White*, 548 U.S. at 67 ("The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."); *Stephens v. City of Bastrop*, No. 3:10-CV-1102, 2011 WL 5402197, at *8 (W.D. La. Nov. 3, 2011) ("[The defendant's] actions, although unfavorable and undesirable to

[the plaintiff], did not cause her injury or harm, as required to be actionable retaliation."); *Pugni v. Reader's Digest Ass'n, Inc.*, No. 05 Civ. 8026, 2007 WL 1087183, at *23 (S.D.N.Y. Apr. 9, 2007) (finding "[a supervisor's] alleged 'threat' that plaintiff's days at Reader's Digest are numbered did not constitute a materially adverse action" where the threat was never carried out); *see also Bridgeforth v. Jewell*, 721 F.3d 661, 663-64 (D.C. Cir. 2013) ("For . . . alleged harms to be materially adverse, . . . they must not be 'unduly speculative.'").

c.    False Weapon Report

On September 16, 2012, Chance performed an inspection of Cole's patrol gun and stated in a report that it was dirty even though, according to Cole, Chance knew that the gun was cleaned thoroughly by Cole the way he was trained in S.W.A.T. school. Cole asserts that the failed gun inspection was based on his use of comp time and not the condition of the gun (which he insists was oily but clean). In support of his position, Cole complains that photographs are typically taken when an officer fails a weapon inspection, but none were taken of Cole's gun that day. He maintains that the failed gun inspection adversely affects his ability to obtain promotions and transfers within the department.

Here, the court finds that the negative gun inspection does not rise to the level of a materially adverse employment action. Cole does not contest the City's assertion or documentation that Chance inspected the weapons of all twenty-five evening shift officers, four of whom were determined to have dirty weapons. Moreover, no photographs were taken of any of the officers' weapons. Thus, it does not appear that Cole was singled out. Additionally, Cole admitted under oath that Chance does not know the exact manner in which Cole was trained to clean his gun and that Cole has no knowledge about where the gun inspection sheets are kept or

whether his inspection sheet was ever placed in his personnel file or forwarded to Chief Blanton. Importantly, although Cole claims he "could" be written up, suspended, given days off, or terminated for not having a clean weapon, he concedes that none of those events occurred. In short, there is no evidence that any documentation of Cole's failed weapon inspection was placed in his personnel file or sent to Chief Blanton, Internal Affairs, or any selection or promotion boards. As a result, the court finds that there is simply no evidence that this inspection has adversely affected Cole's job in any material way. *See Grice v. FMC Techs., Inc.*, 216 F. App'x 401, 407 (5th Cir. 2007) (finding unjustified reprimands "trivial" and not materially adverse in the retaliation context); *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007) (holding that a written disciplinary warning for insubordination and being argumentative would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination"); *see also Muttathottil v. Gordon H. Mansfield*, 381 F. App'x 454, 458 (5th Cir. 2010) (finding that a warning against future disruptive behavior in the workplace did not constitute a materially adverse employment action where the plaintiff was not singled out, there was no express threat of reprisal for engaging in protected activity, and no job loss, suspension, salary reduction, reduction of job duties, or any other form of discipline occurred).

d.    Staying Late During the Holidays

Cole also claims that Chance made him stay later than other officers during the holidays for no reason. The City explains that there was a miscommunication. According to the City and Cole's own deposition, Chance was unaware that Sergeant Davis had previously instructed Officer Barboza to relieve Cole and tell him he could go home. Cole adduces no evidence that conflicts with or casts doubt on Defendant's explanation. Thus, construed in the light most favorable to

23

Cole, this incident appears to be nothing more than a misunderstanding. *See Gates v. Potter*, No. 3:07-CV-667, 2009 WL 1668457, at \*4 (W.D. Ky. June 11, 2009) (stating, in a case involving race discrimination and retaliation, that the "federal courts and the discrimination laws it enforces are designed to deal with complaints which concern materially adverse actions, not everyday nuisances, misunderstandings, mistakes or poor behavior"); *see also Diab v. Chicago Bd. of Educ.*, 850 F. Supp. 2d 899, 923 (N.D. Ill. 2012) (finding "trivial irritations born of an apparent misunderstanding" did not amount to "materially adverse" employment actions).

e.   <u>Street Crimes Unit</u>

Next, Cole claims that he was not promoted to the Street Crimes Unit because Chance made false and misleading statements about him to the hiring committee for that unit. As with the Narcotics Unit, the denial of a promotion is a materially adverse action that would dissuade a reasonable employee from engaging in protected activity. *See AuBuchon*, 743 F.3d at 643; *Alvarado*, 492 F.3d at 612; *Booker*, 2009 WL 4432689, at \*19. Thus, Cole has fulfilled the second element of a prima facie case as to this allegation.

f.   <u>Disobeying a Direct Order</u>

Cole further alleges that Chance retaliated against him by accusing him of disobeying a direct order during an incident in which Cole and other officers attempted to arrest a suspect in a residence. According to Cole, Chance stated that he (Cole) could have been written up for his allegedly disobeying an order. Nonetheless, Cole concedes that he was not written up, reprimanded, or otherwise disciplined for his actions. As such, Cole has not demonstrated that he suffered a materially adverse action that would dissuade a reasonable employee from engaging in protected activity. *See Muttathottil*, 381 F. App'x at 458; *DeHart*, 214 F. App'x at 442

(holding that a written warning for insubordination, for being argumentative, and for excessive absenteeism would not "have dissuaded a reasonable worker from making or supporting a charge of discrimination," and noting that "there were colorable grounds for the warning"); *see also White*, 548 U.S. at 67.

g.    Attempt to Change Comp Time Policy

Cole also complains that in 2012, Blitch attempted to change the payment policy for all of the K-9 officers (including Cole) to reduce the amount of comp time earned. Although Cole apparently believes that Blitch was the person behind this investigation into comp time accrual, he testified that Blitch was ordered to look into the K-9 Unit's comp time policy by Chief Blanton. Nonetheless, Cole admitted that he too was asked by Chief Blanton to investigate the comp time issues. Additionally, Cole was invited to speak at a budget meeting with supervisors regarding the issues. Significantly, and despite any ideas suggested by Blitch and/or Cole, the policy was never changed. Thus, Cole never suffered any harm or materially adverse action as a result of Blitch's alleged "attempts" to change the policy. *See White*, 548 U.S. at 67 (recognizing that the anti-retaliation provision protects an individual from retaliation that causes harm); *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) (holding that an employee does not suffer a materially adverse change in employment when the "employer merely enforces its preexisting disciplinary policies in a reasonable manner"); *Coburn v. Cargill, Inc.*, No. 09-2844, 2012 WL 6607287, at *1 n.1 (W.D. Tenn. Dec. 18, 2012) (stating that because the change in the policy was not material, it did not constitute a materially adverse employment action); *cf. Giles v. City of Dallas*, 539 F. App'x 537, 544 (5th Cir. 2013) (stating in the context of a Title VII race discrimination

claim, "[b]ecause the policy was never implemented, it cannot amount to an adverse employment action").

### h. Commendations

Cole next contends that on two occasions, citizens phoned in commendations regarding his work, yet Cole was never informed. The evidence cited by Cole, however, also includes his admission that he does not know with whom these citizens spoke when they called. As a consequence, there is no evidence—only speculation—as to any involvement by Chance or Blitch and as to any harm Cole suffered as a result. Moreover, the court finds this to be precisely the sort of petty slight or minor annoyance against which the FLSA does not protect. *See White*, 548 U.S. at 68 ("An employee's decision to report [retaliatory] discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."); *Stingley v. Den-Mar, Inc.*, 347 F. App'x 14, 19 (5th Cir. 2009), *cert. denied*, 559 U.S. 1006 (2010) (observing that an unsubstantiated "belief that [a co-worker] maliciously talked about [plaintiff] and caused others to treat her less cordially" was "insufficient to raise a genuine issue of fact as to whether [plaintiff] suffered a materially adverse employment action").

### i. Purported Threats

Cole also claims that on January 24, 2013, Odom threatened his employment by stating: he heard that Cole "was filing a lawsuit" and that he heard Cole was going to file criminal charges against Chief Blanton for inappropriately dismissing a ticket. At deposition, Cole testified that Odom cautioned "if you do so that can ruin your reputation and your career in law enforcement," and "[t]he last person that reported a crime doesn't work here anymore . . . Your career in law

enforcement is going to be fucked if that's not true. You better know what you're talking about before you come with that towards me." Viewed in the light most favorable to Cole, the alleged threat does not pertain to Cole's complaints against Blitch and Chance for alleged FLSA violations. The context of this conversation suggests that Odom warned Cole to make sure he had all of his facts straight before filing criminal charges against Chief Blanton. Given that the comments were not directed to Cole's FLSA complaints, but instead to the possible filing of criminal charges against Chief Blanton, the court finds that no reasonable employee would be dissuaded from engaging in protected activity under the FLSA.[7] *Cf. Holloway v. Dep't of Veterans Affairs*, 309 F. App'x 816, 819 (5th Cir. 2009) (finding that a supervisor's criticism of an employee's EEO complaints did not constitute such material adversity as to dissuade a reasonable worker from making a discrimination charge); *see Karges v. Charleston Cnty. Sheriff's Office*, No. 2:08-CV-2163, 2010 WL 3270310, at *7 n.4 (D.S.C. Aug. 17, 2010) ("The court concludes that [the sheriff's] threat to terminate Plaintiff, which was never carried out was not materially adverse.").[8]

j.      Sergeant J. Lloyd's ("Lloyd") Comments

On February 15, 2013, during a shift meeting, one of the evening supervisors, Sergeant Lloyd allegedly made the following statement: "a person on evenings takes comp time once a

_____

[7] In fact, Cole was not dissuaded from continuing to pursue his FLSA complaints, as evidenced by this litigation.

[8] Even assuming Odom's statements would dissuade a reasonable worker from engaging in protected activity, there is no evidence that his comments were in retaliation for Cole's prior FLSA complaints. *See Hagan*, 529 F.3d at 624 (stating that a plaintiff must make a prima facie showing of a causal link between the activity and the adverse action). Again, the context of the conversation reveals that Odom was warning Cole not to file criminal charges against Chief Blanton unless he was certain his facts were correct, and it appears from Cole's deposition that Odom's remark that he heard Cole was filing a lawsuit was made in passing.

week and fucks his buddies over." Cole, convinced that Lloyd's comment referred to him, confronted the sergeant, stating: "if you are going to talk about me, you might as well use my name and don't just say 'someone.'" At deposition, Cole testified that Lloyd did not react to his retort. Rather, Lloyd "just ignored" Cole.

Cole has presented no evidence of any actual, objective harm he suffered as a result of Lloyd's alleged remark. *See White*, 548 U.S. at 67-70. The comment was not a formal disciplinary action, it had no effect on Cole's employment, pay, or benefits, and had no meaningful, objective impact on his day-to-day activities. Thus, the court finds that the remark is not of such a nature that it would dissuade a reasonable employee from engaging in protected activity. *See White*, 548 U.S. at 68; *King v. Louisiana,* 294 F. App'x 77, 85 (5th Cir. 2008), *cert. denied*, 556 U.S. 1210 (2009) (holding that "allegations of unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute adverse employment actions as . . . retaliation"); *see also Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 485 (5th Cir. 2008) (holding that, as a matter of law, "rude treatment," including being assigned harder work, was not materially adverse as a matter of law). Moreover, Cole has presented no evidence to substantiate his subjective belief that Lloyd was referring to him when he made the comment. *Grice*, 216 F. App'x at 407 ("[Plaintiff's] subjective belief that the incidents were retaliatory, without more, is not sufficient to survive summary judgment."). Therefore, Cole cannot sustain a retaliation claim based on this event.[9]

---

[9] There is also no evidence that Lloyd was aware of Cole's complaint at the time of his alleged comments in a shift meeting on February 15, 2013. Thus, Cole cannot meet the causation prong of the prima facie analysis. *See Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999); *accord Gollas v. Univ. of Tex. Health Sci. Ctr.*, 425 F. App'x 318, 325 (5th Cir. 2011); *Ackel v. Nat'l Comm'cns, Inc.*, 339 F.3d 376, 385-86 (5th Cir. 2005); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003), *cert. denied*, 540 U.S. 1107 (2004).

3.    Causal Link

Although the third element of a *prima facie* case—causation—is similar to the ultimate issue

in an unlawful retaliation claim, the standard for establishing a causal link at the *prima facie* case

stage is much less stringent.  *See Ackel*, 339 F.3d at 385; *Gee v. Principi*, 289 F.3d 345, 345 (5th

Cir. 2002); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001); *Medina v. Ramsey Steel

Co.*, 238 F.3d 674, 685 (5th Cir. 2001).  As the United States Court of Appeals for the Fifth

Circuit has commented in the Title VII context:

> At first glance, the ultimate issue in an unlawful retaliation case—whether the
> defendant discriminated against the plaintiff *because* the plaintiff engaged in
> conduct protected by Title VII—seems identical to the third element of the
> plaintiff's prima facie case—whether a *causal* link exists between the adverse
> employment action and the protected activity.  However, the standards of proof
> applicable to these questions differ significantly.

*Long v. Eastfield Coll.*, 88 F.3d 300, 304 n.4 (5th Cir. 1996) (emphasis in original).  In order to

establish the requisite causal link, a plaintiff need not prove that his protected activity was the sole

factor in motivating the employer's challenged decision.  *See Everett v. Cent. Miss., Inc. Head

Start Program*, 444 F. App'x 38, 46 (5th Cir. 2011); *Mauder v. Metro. Transit Auth.*, 446 F.3d

574, 583 (5th Cir.), *cert. denied*, 549 U.S. 884 (2006) (citation omitted); *Gee*, 289 F.3d at 345;

*Evans*, 246 F.3d at 354; *Medina*, 238 F.3d at 684.  Rather, a causal link is established when the

evidence demonstrates that the employer's decision to take adverse action was based in part on

knowledge of the employee's protected activity.  *See Ackel*, 339 F.3d at 385-86 (citing *Medina*,

238 F.3d at 684); *see also Eberle v. Gonzales*, 240 F. App'x 622, 629 (5th Cir. 2007) (citing

*Manning*, 332 F.3d at 883 & n.6).  "The 'causal link' element of the *prima facie* case is satisfied

when the plaintiff shows that the employment decision and his protected activity 'were not wholly

unrelated.'" *Medina*, 238 F.3d at 684 (quoting *Simmons v. Camden Cnty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.), *cert. denied*, 474 U.S. 981 (1985)).

To satisfy the causation prong, "a plaintiff must show that the decisionmaker who committed the adverse employment action was aware of the plaintiff's protected activity." *Perches v. Elcom, Inc.*, 500 F. Supp. 2d 684, 692 (W.D. Tex. 2007) (citing *Manning*, 332 F.3d at 883); *see Gollas*, 425 F. App'x at 325; *Ackel*, 339 F.3d at 385-86; *Medina*, 238 F.3d at 684. "If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct." *Chaney*, 179 F.3d at 168; *accord Gollas*, 425 F. App'x at 325; *Ackel*, 339 F.3d at 385-86; *Manning*, 332 F.3d at 883.

"The timing of the adverse employment action can be a significant, although not necessarily determinative, factor." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995); *accord Lemaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007); *Evans*, 246 F.3d at 354. "'Close timing between an employee's protected activity and an adverse action against [him] may provide the "causal connection" required to make out a prima facie case of retaliation.'" *Evans*, 246 F.3d at 354 (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir.), *cert. denied*, 522 U.S. 948 (1997)); *accord McCoy*, 492 F.3d at 561 n.28; *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 995 (5th Cir. 2005). The causation element may be proved when the protected activity and the adverse employment action occur "'very close'" in time. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (finding a period of twenty months between protected act and adverse employment action to suggest "no causality at all"); *Roberts v. Unitrin Specialty Lines Ins. Co.*, 405 F. App'x 874, 879 (5th Cir. 2010). The Fifth

Circuit allows for an "inference of causation . . . where the adverse employment action occurs in close temporal proximity to the protected conduct." *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007) (citing *Evans*, 246 F.3d at 354); *Roberts*, 405 F. App'x at 879. The *Evans* court "relied on decisions from district courts [within the Fifth Circuit] that found 'a time lapse of up to four months . . . sufficient to satisfy the causal connection for summary judgment purposes.'" *Richard*, 233 F. App'x at 338 (citing *Evans*, 246 F.3d at 354) (holding that a two-and-a-half month gap gave rise to an inference of causation); *but see Everett*, 444 F. App'x at 47 & n.31 (noting, in an unpublished opinion, that three- and four-month periods have been found to be insufficient to establish a *prima facie* case in certain circumstances); *Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 260 (5th Cir. 2011) (four-month gap, standing alone, was insufficient).

### a. Narcotics Unit

In this instance, the court finds that Cole has failed to satisfy the "causal link" prong of the prima facie case of retaliation. Despite the fact that only one month elapsed between Cole's complaint in April 2012 and his failure to be promoted to the Narcotics Unit in May 2012, there is no evidence suggesting that the members of the Narcotics Unit hiring committee—Lieutenant Jon Carona ("Carona"), Sergeant Scott Argo, Detective Reid Rowe, Detective Chris Billiot, and Detective Paul Arvizo—were aware that Cole had lodged a complaint against Blitch and Chance in April 2012. In addition, although Cole believes that Chance and Blitch negatively influenced the hiring committee, he admitted that he has no evidence that either individual spoke adversely about him to any members of the board, all of whom Cole agreed were fair. Cole's subjective

belief that he was the victim of retaliatory discrimination does not create a material factual dispute. *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 651 (5th Cir. 2004).

In fact, both Chance and Blitch wrote positive letters recommending Cole for the Narcotics Unit. Chance's letter states that Cole "would be a good officer for the narcotics unit and [I] recommend him for that position." Blitch's letter states that Cole "is not one to use sick leave," he is "always willing to help with any assignment," is "more than capable in his ability to apply the law and use it in his favor," would be "able to manage a caseload," and never exercised bad judgment. Cole takes issue, however, with a sentence in Blitch's letter stating that Cole accrues an extreme amount of comp time due to his Field Training Officer, K-9, and S.W.A.T. duties. Nonetheless, the letter does not state that Cole's comp time had ever been wrongfully taken or abused, nor does it mention that Cole filed any sort of grievance.

Notably, Cole ranked third out of twelve applicants, and he agreed that the individuals ranked in front of and behind him were ranked in the proper order.[10] Indeed, the two officers who ranked ahead of Cole—William Crain ("Crain") and Reagan Sweat ("Sweat")—had more experience and more seniority.

Based on the foregoing, and viewing the evidence in the light most favorable to Cole, the court finds that he does not satisfy the "causal link" prong of the prima facie case of retaliation. There is simply no evidence that the board members tasked with ranking the candidates were aware of Cole's prior protected activity. *See Nelson v. Lake Charles Stevedores, L.L.C.*, No. 2:11-CV-1377, 2014 WL 1339827, at *10 (W.D. La. Apr. 2, 2014) (opining that plaintiff did not

---

[10] The twelve applicants were evaluated and numerically ranked by the five-member board, based on eight different averaged, and weighted, categories plus seniority points. The top numerical candidate was selected.

meet the causal link prong of her prima facie case where she submitted "no evidence that those who allegedly denied her work even had knowledge of the E.E.O.C. complaint"). As a consequence, the City is entitled to summary judgment on this claim.

b.    Street Crimes Unit

As previously mentioned, Cole alleges that in October 2012, his opportunity to be an investigator for the Street Crimes Unit was adversely affected by Chance, who was on the ten-member hiring board.[11] According to Cole, Chance retaliated against him by falsely telling the other board members that Cole failed to follow a direct order and that he was hard to supervise.

The incident in question involved certain officers attempting to gain entry into a home to arrest a suspect. Cole testified that Chance instructed him not to "force entry" into the house unless a "key holder" (one of whom was the complainant who was an hour away in Galveston) arrived and unlocked the door. Later, after receiving a call from Officer Gibson ("Gibson") that the suspect had opened the door, Cole entered the house. According to Cole, Gibson stated: "Hey, I'm going in. You get your dog and clear the house with me." Because Cole did not want to "let [Gibson] go in the house by himself," he entered the house (without forcing entry and without specifically advising Chance via telephone of the changed circumstances).[12] Once inside, the two officers arrested the suspect. Cole believes that because he never forced entry into the house, any statements by Chance that he disobeyed a direct order were false and made in retaliation for his prior FLSA complaints. After the incident, Chance reportedly told Cole that

---

[11] The following officers served on the Street Crimes Unit hiring board: Ramirez, Flores, Chance, Carona, Major Owens, Lieutenant Lebouef, Sergeant Boneau, Sergeant Houston, Officer Walker, and Officer Hebert.

[12] There were, however, radio transmissions covering the house call.

he "could have" been written up for disregarding a direct order. Nevertheless, there is no indication and Cole has presented no evidence that he was ever written up or otherwise disciplined for the incident.[13]

Viewing the evidence in the light most favorable to Cole, the court finds that he has failed to raise a genuine issue of material fact with regard to the third element of a prima facie case—a causal link between the adverse action and his prior FLSA complaints. First, with the exception of Flores and Chance, there is no evidence that any member of the Street Crimes Unit selection committee knew of Cole's complaints against Blitch and Chance. According to Cole, Ramirez was the only board member who knew Cole's version of the incident and the only person on the board who told Cole about Chance's negative comment.[14] Regarding the remaining members of the hiring committee, Cole testified to his belief that they were fair, and he candidly admitted that he did not know whether Chance's account swayed them in any way, and he adduces no evidence on this point. Importantly, there is also no evidence that Cole's FLSA grievance or that his use of comp time was discussed by the selection committee. Moreover, other than Cole's subjective belief, there is no evidence that Cole's grievance some five or six months previously caused Chance to repeat his version of the aforementioned incident. *See Vicknair v. La. Dep't of Pub. Safety & Corrs.*, 555 F. App'x 325, 331 (5th Cir. 2014) ("[P]laintiff's subjective belief, without

---

[13] It is clear that Cole and Chance have differing views of the events of that day. While Cole insists that he did not disobey a direct order because he did not use force to enter the premises, Chance apparently saw it differently, as Cole entered the house (albeit without force) after the *suspect* opened the door (despite Cole's being told not to enter *unless a key holder unlocked the door*).

[14] Another officer who was not a member of the board reportedly also informed Cole that Chance told several Street Crimes Unit officers about the incident.

more, that an adverse employment action was retaliatory is insufficient to survive summary judgment.") (internal quotations omitted).

In addition, Cole admitted that he ranked third out of seventeen applicants, despite his relative inexperience on the force. Cole conceded that Peter Croak ("Croak") and Ahmaal Bodden ("Bodden"), the two applicants ranked ahead of him, both possess the qualifications to serve as Street Crimes Unit investigators. He also acknowledged that a number of the applicants had more experience with the department. Indeed, the documentation filed by the City (which is not contradicted by Cole) indicates that both Bodden and Croak (who ranked first and was selected for the Street Crimes Unit position) had more experience as well as more seniority than Cole.[15] Cole further agreed that several of the other applicants who ranked below him had higher TCLEOSE certifications.

Furthermore, on September 26, 2012, Blitch wrote a very positive letter to Blanton and the Street Crimes Unit selection committee recommending Cole for the position and stating that Cole would be an asset to the unit. While Blitch's letter mentions the amount of comp time used by Cole, this same information is included in letters of recommendation for several other applicants. Moreover, although Cole does not believe that Blitch was sincere in his recommendation, he has no knowledge of Blitch "going behind his back" and speaking adversely about him with the committee members. On October 5, 2012, Chance submitted a letter recommending Cole to the Street Crimes board, opining that Cole would be an effective member of the unit if given the opportunity. For all these reasons, the court finds that Cole has not

---

[15] Although Croak was offered the position, Bodden and Cole remain eligible for one year.

demonstrated a genuine issue of material fact as to the third element of a prima facie case. Accordingly, summary judgment in favor of the City is appropriate.

### 4. Legitimate Non-Retaliatory Reason

Although Cole has not established his prima facie case, the court notes that the City has adduced evidence of a non-retaliatory reason for its decisions not to select Cole for the Narcotics Unit or the Street Crimes Unit. Specifically, the candidates selected for those positions ranked higher in the selection process (which was based on categories of predetermined evaluation criteria, predetermined weighted formulas for each category, and seniority points, to yield a final score for each individual). Stated differently, although Cole placed third out of all the candidates for both the Narcotics and the Street Crimes Units, he was ranked lower than the individuals selected based on the objective hiring criteria used by the department. *See Hockman*, 407 F.3d at 330; *Hunt v. Rapides Healthcare Sys., L.L.C.*, 277 F.3d 757, 768 (5th Cir. 2001), abrogated on other grounds by *White*, 548 U.S. at 57; *Medina*, 238 F.3d at 684 (citing *Long*, 88 F.3d at 305).

### 5. Pretext

The final inquiry, therefore, is whether the proffered reasons for the alleged acts of retaliation are merely pretextual. *See Willis v. Cleco Corp.*, 749 F.3d 314, 318 (5th Cir. 2014); *Strong v. Univ. Healthcare Sys. L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007); *Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001); *see also Ardoin*, 547 F. App'x at 403. "If the plaintiff presents evidence supporting the prima facie case, plus evidence that the reasons given by the employer for the adverse employment action were pretextual, a jury may infer the existence of retaliation." *Mota v. Univ. of Tex. Health Sci. Ctr.*, 261 F.3d 512, 519-20 (5th Cir. 2001) (citing *Reeves*, 530

U.S. at 148); *accord Kanida*, 363 F.3d at 573; *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) (citing *Swanson*, 110 F.3d at 1185). Evidence that raises only a weak inference of pretext, however, is insufficient to create a genuine issue of material fact in the retaliation context. *See Rios*, 252 F.3d at 381. The ultimate burden of persuading the trier of fact that the defendant unlawfully retaliated against the plaintiff for engaging in protected activity remains at all times with the plaintiff. *See Gee*, 289 F.3d at 348; *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998); *see also Strong*, 482 F.3d at 806; *Rios*, 252 F.3d at 380.

"The ultimate determination in an unlawful retaliation case is whether the [protected] conduct . . . was a 'but for' cause of the adverse employment decision." *Long*, 88 F.3d at 305 n.4 (citing *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985)); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517, 2534 (2013); *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir.), *cert. denied*, 133 S. Ct. 136 (2012); *Strong*, 482 F.3d at 806; *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005). Hence, the employee must show that the employer's explanation is unworthy of credence and that "but for" his protected activities he would not have suffered the adverse employment action. *See Strong*, 482 F.3d at 806; *Septimus*, 399 F.3d at 608; *Kanida*, 363 F.3d at 580-81. "While this portion of the analysis may seem identical to the 'causal link' step in the prima facie case, the burden here is more stringent." *Medina*, 238 F.3d at 685 (citing *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116-17 (5th Cir. 1983)); *see Stewart v. RSC Equip. Rental, Inc.*, 485 F. App'x 649, 651 (5th Cir. 2012).

As with his prima facie case, the court finds that Cole has failed to demonstrate that the City's reasons for not promoting him to the Narcotics Unit and the Street Crimes Unit were

pretexts for unlawful retaliation. He has made no showing that the City's articulated reasons are false or unworthy of credence. In addition, as explained above, despite Cole's personal belief that he was the best candidate for both positions, he has not rebutted the evidence proffered by the City indicating that he finished third in each selection process. *See Akers v. Hinds Cmty. Coll.*, 515 F. App'x 249, 251 (5th Cir. 2012) (finding the plaintiff's personal belief in her superiority for a certain position insufficient to sustain her retaliation claim, remarking that "[n]o juror could reasonably regard her as clearly better qualified for the position").

Moreover, Cole has adduced insufficient evidence of retaliatory motive with regard to the selection committee members of the Narcotics Unit or the Street Crimes Unit. Indeed, he expressed his belief that, with the exception of Chance, all other hiring committee members were fair. Additionally, aside from Chance repeating his version of the incident involving the arrest of the suspect in the house, there is no evidence that Chance or Blitch went "behind [Cole's] back" and spoke adversely of him to the board or disclosed his prior FLSA complaints. For these reasons, summary judgment is warranted with respect to Cole's retaliation claim.

F.     TWA Overview

The purpose of the TWA is twofold: (1) to "protect public employees from retaliation by their employer when, in good faith, they report a violation of law, and (2) to secure lawful conduct by those who direct and conduct the affairs of government." *Bates v. Randall Cnty.*, 297 S.W.3d 828, 837 (Tex. App.—Amarillo 2009, no pet.) (citing *City of New Braunfels v. Allen*, 132 S.W.3d 157, 161 (Tex. App.—Austin 2004, no pet.)). "A public employee whose employment is suspended or terminated or who is subjected to an adverse personnel action in violation of [the Act] is entitled to sue for injunctive relief, actual damages, court costs, and reasonable attorneys'

fees." TEX. GOV'T CODE ANN. § 554.003(a); *accord Bates*, 297 S.W.3d 828, 834-35 (Tex.

App.—Amarillo 2009, no pet.); *City of Houston v. Levingston*, 221 S.W.3d 204, 231 (Tex.

App.—Houston [1st Dist.] 2006, no pet.). "Because the Act is remedial in nature, it should be

liberally construed to effect its purpose." *Bates*, 297 S.W.3d at 837.

Section 554.002 of the TWA prohibits retaliation against an employee for reporting a

perceived violation of the law. *See* TEX. GOV'T CODE ANN. § 554.002. "To establish a

whistleblower claim, an employee must demonstrate that (a) the employee reported an alleged

violation of law to an appropriate law enforcement authority; (b) the employee made the report

in good faith; (c) the employer took an adverse employment action against the employee because

the employee made the report; and (d) the employer's action proximately caused the employee's

injuries." *Forsyth v. City of Dallas*, 91 F.3d 769, 775 (5th Cir. 1996), *cert. denied*, 522 U.S. 816

(1997); *Jackson v. Singh*, No. H-06-2920, 2008 WL 2690357, at *16 (S.D. Tex. July 8, 2008);

*Ahmed v. Tex. Tech Univ. Health Sci. Ctr.*, No. 07-11-00176-CV, 2013 WL 265076, at *3 (Tex.

App.—Amarillo Jan. 23, 2013, no pet.).

In the context of the TWA, the Texas Supreme Court has held that "'good faith' means that

(1) the employee subjectively believed that the conduct reported was a violation of law, and (2) the

employee's belief was reasonable in light of the employee's training and experience." *Tex. Dep't

of Transp. v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002) (citing *Wichita Cnty. v. Hart*, 917

S.W.2d 779, 784 (Tex. 1996)); *see Univ. of Tex. Sw. Med. Ctr. v. Gentilello*, 398 S.W.3d 680,

683 (Tex. 2013). "The test's first element—the 'honesty in fact' element—ensures that an

employee seeking a Whistleblower Act remedy believed he was reporting an actual violation of

law." *Needham*, 82 S.W.3d at 320 (citing *Hart*, 917 S.W.2d at 784-85); *City of S. Houston v.*

*Rodriguez*, 425 S.W.3d 629, 635 (Tex. App.—Houston [14th Dist.] 2014, pet. filed). "The test's second element ensures that, even if the reporting employee honestly believed that the reported act was a violation of law, the reporting employee only receives Whistleblower Act protection if a reasonably prudent employee under similar circumstances would have believed the facts, as reported, were a violation of law." *Needham*, 82 S.W.3d at 320 (citing *Hart*, 917 S.W.2d at 785); *Rodriguez*, 425 S.W.3d at 635.

"There is a rebuttable presumption that, if the termination, suspension, or adverse personnel action happens not later that the 90th day after the date on which an employee reports a violation of law, the suspension, termination, or adverse personnel action is because the employee made the report." *Harris Cnty. v. McDougal*, No. 01-98-00812-CV, 2000 WL 190204, at *3 (Tex. App.—Houston [1st Dist.] Feb. 17, 2000) (citing Tex. Gov't Code Ann. § 554.004); *see Flores v. City of Liberty*, 318 S.W.3d 551, 558 (Tex. App.—Beaumont 2010, no pet.).

Cole's TWA claims are not viable for essentially the same reasons his retaliation claims fail. First, as set forth in the discussion of "materially adverse action" for purposes of FLSA retaliation, Cole has suffered no "adverse personnel action" with regard to most of the alleged retaliatory acts. "The anti-retaliation provision of Title VII and the Whistleblower Act serve similar purposes, and . . . it is appropriate to require plaintiffs to show objective, material harm under both." *Montgomery Cnty. v. Park*, 246 S.W.3d 610, 614 (Tex. 2007) (adopting the *White* standard "with appropriate modifications"); *City of Houston v. Smith*, No. 01-13-00241, 2014 WL 768330, at *3 (Tex. App.—Houston [1st Dist.] Feb. 25, 2014, no pet.). Like a claim for retaliation under the FLSA, "a personnel action is adverse within the meaning of the Whistleblower Act if it would be likely to dissuade a reasonable, similarly situated worker from

making a report under the Act." *Park*, 246 S.W.3d at 614. "[P]ersonnel action" is defined as "an action that affects a public employee's compensation, promotion, demotion, transfer, work assignment, or performance evaluation." TEX. GOV'T CODE ANN. § 554.001(3).

The evidence before the court, when viewed in the light most favorable to Cole, reveals that he did not suffer an "adverse personnel action" likely to dissuade a reasonable, similarly situated worker from making a report under the TWA for the following incidents: (1) Chance's alleged unsuccessful attempts to have Cole removed as a Field Training Officer; (2) Cole's failed gun inspection; (3) the incident during the Christmas holidays in which Cole stayed late on one occasion; (4) Chance's accusation that Cole disobeyed a direct order; (5) Blitch's unsuccessful attempt to change the comp time policy; (6) the two occasions in which Cole was not told that citizens telephoned in commendations; (7) Odom's conversation with Cole on January 24, 2013, wherein Cole was warned that he "better know what [he's] talking about" before filing criminal charges against Chief Blanton; and (8) Lloyd's alleged comment on February 15, 2013, that "a person on evenings takes comp time once a week and fucks his buddies over." In each of these instances, Cole has failed to present evidence of any tangible harm suffered as a result. There is no evidence that his compensation or work assignments were adversely affected, he did not receive a poor performance evaluation, and he was not demoted, transferred, or denied a promotion based on these alleged instances of retaliation. *See Bridgeforth*, 721 F.3d at 663-64; *Muttathottil*, 381 F. App'x at 458; *Grice*, 216 F. App'x at 407; *DeHart*, 214 F. App'x at 442; *Diab*, 850 F. Supp. 2d at 923; *Stephens*, 2011 WL 5402197, at *8; *Gates*, 2009 WL 1668457, at *4; *see also Giles*, 539 F. App'x at 544; *Joseph*, 465 F.3d at 91; *Coburn*, 2012 WL 6607287, at *1 n.1. The only arguably adverse personnel actions were the two failures to promote.

Cole's TWA claim based upon the alleged statements of Odom on January 24, 2013, fail for additional reasons. First, the basis of Cole's lawsuit is that he was retaliated against for complaining about the actions of Chance and Blitch with regard to the FLSA. Cole never reported criminal activity on the part of Chief Blanton. Second, even if Odom's statements would dissuade a reasonable employee from reporting violations of the law, Cole never initiated the grievance process required for TWA claims in response to this "retaliation." *See* TEX. GOV'T CODE ANN. § 554.006 ("A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to . . . adverse personnel action before suing under this chapter.");[16] *see also Aguilar v. Socorro Indep. Sch. Dist.*, 296 S.W.3d 785, 789–90 (Tex. App.—El Paso 2009, no pet.) (holding that the trial court lacked jurisdiction because the plaintiff did not "initiate" his employer's grievance procedure where he failed to participate meaningfully in an arbitration proceeding); *Jordan v. Ector Cnty.*, 290 S.W.3d 404, 406 (Tex. App.—Eastland 2009, no pet.) (finding no jurisdiction where employee failed to initiate properly the employer's grievance process); *Med. Arts Hosp. v. Robison*, 216 S.W.3d 38, 44 (Tex.

---

[16] "Section 554.006 does not require that grievance or appeal procedures be exhausted before suit can be filed; rather, it requires that such procedures be timely initiated and that the grievance or appeal authority have 60 days in which to render a final decision." *Univ. of Tex. Med. Branch at Galveston v. Barrett*, 159 S.W.3d 631, 632-33 (Tex. 2005); *Fort Bend Indep. Sch. Dist. v. Gayle*, 371 S.W.3d 391, 396 (Tex. App.—Houston [1st Dist.] 2012, no pet.). "While the Whistleblower Act does not dictate what actions are required to 'initiate' the grievance procedure, the Act is remedial in nature and should be liberally construed to effect its purpose." *Tex. Youth Comm'n-Evins Reg'l Juvenile Ctr. v. Garza*, No. 13-08-00527, 2009 WL 1238582, at *5-6 (Tex. App.—Corpus Christi 2009, no pet.) (citing *Moore v. Univ. of Houston-Clear Lake*, 165 S.W.3d 97, 102 (Tex. App.—Houston [14th Dist.] 2005, no pet.)). "Texas courts of appeals have addressed a number of disputes over whether a claimant's actions were sufficient to 'initiate' a grievance or appeal procedure within the meaning of the statute and have focused on the need to provide reasonable notice 'that is, fair notice of the employee's intent to appeal a disciplinary decision and notice of which decision [ ] the employee intends to appeal.'" *Gayle*, 371 S.W.3d at 396 (quoting *Hitchcock Indep. Sch. Dist. v. Walker*, No. 01-10-00669, 2010 WL 5117912, at *3 (Tex. App.—Houston [1st Dist.] Dec. 16, 2010, no pet.) (citing *Tarrant Cnty. v. McQuary*, 310 S.W.3d 170, 177 (Tex. App.—Fort Worth 2010, pet. denied))).

App.—Eastland 2006, no pet.) (concluding that the trial court had no jurisdiction where former employee did not provide notice of her TWA claim before filing suit).

Similarly, the alleged statement by Lloyd occurred after the department's prior grievance process had been concluded. Cole admits in his complaint that the grievance process related to his FSLA complaints had been concluded by January 24, 2013. There is no evidence that Cole initiated the department's internal grievance procedures related to this incident prior to his filing the instant lawsuit. Because Cole failed to comply with the TWA's requirement that a public employee must initiate a grievance pursuant to § 554.006, this incident is not actionable. *See Aguilar*, 296 S.W.3d at 789-90; *Jordan*, 290 S.W.3d at 406; *Robison*, 216 S.W.3d at 44.

Without regard to whether Cole's various conversations with Flores and Chief Blanton were sufficient to "initiate" the City's formal grievance procedures,[17] there is nonetheless insufficient evidence upon which to create a genuine issue of material fact as to causation for each alleged retaliatory act, namely, the City's failure to promote Cole to the Narcotics and Street Crimes Units. Even with the assistance of the rebuttable presumption created by TEX. GOV'T

---

[17] Step 1 of the department's grievance procedure encourages employees to attempt an informal resolution. In the event such attempts are unsuccessful, the employee must "submit the issue *in writing* to the Association Grievance Committee or the Association President, within (7) days of the employee's actual or constructive knowledge of the occurrence of the event causing the problem." *See* Docket No. 14-1, p. 65 (emphasis added). It is undisputed that Cole never filed a grievance in writing for *any* of the incidents he asserts form the basis of his TWA claims. *See Johnson v. Dublin*, 46 S.W.3d 401, 403-04 (Tex. App.—Eastland 2001, pet. denied) (concluding that appellant failed to initiate city's grievance procedure because he did not submit written copy of grievance). Nonetheless, the evidence is sufficient to show that Chief Blanton and Flores were aware that Cole believed he was being retaliated against for complaining about Blitch and Chance. *See Robinson*, 216 S.W.3d at 43 (focusing on whether an "employer received actual notice that its employee believed that he or she had been fired in retaliation for reporting illegal activities" when considering if plaintiff had initiated the grievance process).

CODE ANN. § 554.004,[18] Cole's TWA claims do not survive. "The statutory presumption is rebutted and becomes a nullity once a defendant produces sufficient evidence to suggest that it did not take the adverse employment decision against the employee because of his reports." *Wyman v. City of Dallas*, No. 3:02-CV-2496, 2004 WL 2100257, at *15 (N.D. Tex. Sept. 21, 2004) (citing *Tex. A&M Univ. v. Chambers*, 31 S.W.3d 780, 784-85 (Tex. App.—Austin 2000, pet. denied). When the defendant "discloses the facts in [its] possession and such evidence is sufficient to support a finding of non-retaliation, the case proceeds as if no presumption ever existed." *Chambers*, 31 S.W.3d at 784; *see also Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 358 (Tex. 1971).

As discussed in Section II.E.3.a. *supra*, Cole has adduced no evidence that the members of the Narcotics Unit hiring board knew that Cole had previously complained about Chance and Blitch. *See Mullinax v. Texarkana Indep. Sch. Dist.*, No. 02-40220, 2002 WL 31115047, at *2 (5th Cir. Sept. 12, 2002) (affirming district court's denial of plaintiff's First Amendment retaliation claim where plaintiff put forth no evidence that the school board knew of her protected

---

[18] Section 554.004(a) states:

"A public employee who sues under this chapter has the burden of proof, except that if the suspension or termination of, or adverse personnel action against, a public employee occurs not later than the 90th day after the date on which the employee reports a violation of law, the suspension, termination, or adverse personnel action is presumed, subject to rebuttal, to be because the employee made the report."

Section 554.004(b) provides that employers have an affirmative defense to suit if "the employing state or local governmental entity would have taken the action against the employee, which forms the basis of this suit, based solely on information, observation or evidence that is not related to the fact the employee made a report protected under the [TWA]." TEX. GOV'T CODE ANN. § 554.004(b).

The denial of the promotion to the Narcotics Unit took place in May 2012, approximately thirty days after Cole's April 2012 complaint. The Street Crimes Unit decision, however, did not occur until five months after the April 2012 complaint.

44

activities). Cole merely speculates that Chance and Blitch negatively influenced the hiring committee, but he admitted he has no evidence that either individual spoke adversely about him to any member of the board or informed them that he had lodged a complaint. *See Jones v. Halliburton Co.*, 791 F. Supp. 2d 567, 591 (S.D. Tex. 2011) ("Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence."). Rather, Chance and Blitch both submitted positive letters of recommendation for Cole. Although Blitch's letter mentions that Cole accrues an extreme amount of comp time, he does not assert that such time was ever wrongfully used or abused, and he does not state that Cole previously filed a grievance.

Moreover, the City offered evidence to rebut the presumption set forth in § 554.004 by demonstrating that the Narcotics Unit position was offered to the individual who ranked first out of all the applicants. It is undisputed that Cole ranked third. Cole also agreed that the officers ranked in front of and behind him were ranked properly. Indeed, the two officers who ranked ahead of Cole had more experience and more seniority. All twelve applicants were evaluated and numerically ranked by the five-member board, based on eight different averaged and weighted categories plus seniority points. There is no evidence that the selection criteria were adopted or applied in a retaliatory manner or that the process was somehow rigged to ensure Cole's failure. In short, the court finds that Cole has not demonstrated a genuine issue of material fact with regard to his TWA claim predicated on his denial of the Narcotics Unit promotion. Accordingly, the City is entitled to summary judgment.

Cole's TWA claim based on the City's failure to promote him to the Street Crimes Unit meets a similar fate and fails for the same reasons as his FLSA retaliation claim. As noted, Cole

alleges that in October 2012, Chance prevented Cole from being selected as a Street Crimes Unit investigator by fabricating a story (and repeating it to the other members of the board) that Cole disobeyed a direct order. Based on Cole's sworn testimony, however, Chance's account is not unsupported. Indeed, Cole testified that he was directed by Chance not to "force entry" into the house unless a "key holder" unlocked the door. While the two men clearly disagree as to whether Cole disobeyed a direct order by entering the house, there is no evidence beyond Cole's subjective belief that Chance made up the story and repeated it in retaliation for Cole's prior FLSA complaint.

Moreover, Cole admits that he has no evidence that Chance's negative comment influenced the other nine members of the selection board, all of whom Cole agreed were fair. In fact, Ramirez knew of Cole's version of the same event prior to the board's decision. There is also no evidence that Cole's FLSA grievance or that his use of comp time was discussed by the selection committee. Further, Blitch and Chance wrote positive letters of recommendation for Cole. While Blitch's letter mentions the amount of comp time Cole used in the last calendar year, this same information was included in all of his letters of recommendation for the other applicants, and the letter recommending Cole does not state that such time was taken inappropriately or abused. Importantly, Cole admits he has no knowledge of Blitch "going behind his back" and speaking adversely about him with the committee members or advising them not to select Cole because of his accrual or use of comp time.

Similar to the Narcotics Unit hiring process, the Street Crimes Unit selection committee ranked several applicants (in this case seventeen) based on objective, predetermined criteria. Cole makes no allegation and adduces no evidence that the criteria were unfair or that the process was

constructed to ensure Cole's failure. It is undisputed that Cole ranked third, despite his relatively short tenure with the force. Croak, the applicant who was offered the position, ranked first in the selection process, and Cole acknowledges that Croak had more experience with the department. In sum, Cole has not demonstrated a genuine issue of material fact as to the City's failure to select Cole as an investigator for the Street Crimes Unit. Accordingly, summary judgment in favor of the City is appropriate on all of Cole's TWA claims.[19]

III.    Conclusion

Consistent with the foregoing analysis, the City's motion for summary judgment is GRANTED. Cole fails to present a claim that warrants relief. There remain no material facts in dispute, and the City is entitled to judgment as a matter of law.

SIGNED at Beaumont, Texas, this 16th day of July, 2014.


_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

---

[19] Therefore, the City's remaining grounds for summary judgment need not be addressed.